IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00344-REB-KLM

VASHONE L. ADAMS,

    Plaintiff,

v.

EMC MORTGAGE CORPORATION, a Foreign Corporation,
CAROL YOUNG, individually and as agent,
JAMES DIMON, individually and as agent,
ACQURA LOAN SERVICING, a Foreign Corporation,
JP MORGAN CHASE BANK, N.A., and
WILLIAM BERONG, individually and as agent,

    Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants Acqura Loan Services, LLC ("Acqura") and William Berrong's ("Berrong") (collectively, the "Acqura Defendants") **Motion to Dismiss Third Amended Complaint by Defendants Acquara [sic] Loan Services, LLC and William Berrong and Supporting Brief** [Docket No. 37; Filed July 2, 2012] ("Acqura's Motion") and on Defendants EMC Mortgage, LLC ("EMC"), JPMorgan Chase Bank, N.A. ("Chase"), Carol Young ("Young"), and James Dimon's ("Dimon") (collectively, the "Chase Defendants") **Motion to Dismiss Plaintiff's Third Amended Complaint and Jury Demand Pursuant to Fed. R. Civ. P. 12(b)(1) and (6)** [Docket No. 38; Filed July 2, 2012] ("Chase's Motion").  On July 23, 2012, Plaintiff filed a Response to Acqura's Motion [#40] and a Response to Chase's Motion [#41].  On August 9, 2012, the Acqura and Chase

Defendants each filed a Reply [#43, #44].

The Motions are ripe for review. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C.3, the Motions have been referred to this Court for recommendation [#39]. Having reviewed the entire case file and being sufficiently advised, the Court respectfully **RECOMMENDS** that the Motions [#37, #38] be **GRANTED**.

## I. Background

Plaintiff, who proceeds in this matter *pro se*, brings this action against Defendants for alleged violations of: (1) 42 U.S.C. § 1981 (against all Defendants) ("Claim One"); (2) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 (against all Defendants) ("Claim Two"); (3) 42 U.S.C. §§ 1981, 1982, 1983, and 1988(A) (against all Defendants) ("Claim Three"); (4) the Fourteenth Amendment (against all Defendants) ("Claim Four"); (5) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (against all Defendants) ("Claim Five"); (6) the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, 1635 (against all Defendants) ("Claim Six"); (7) the Federal Trade Commission Act ("FTCA") (against all Defendants) ("Claim Seven"); (8) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617 (against all Defendants) ("Claim Eight"); (9) the Colorado Consumer Protection Act ("CCPA") (against all Defendants) ("Claim Nine"); (10) the Colorado Foreclosure Protection Act ("CFPA") (against all Defendants) ("Claim Ten"); (11) fraudulent inducement/concealment (against the Acqura Defendants and Defendants EMC and Chase) ("Claim Eleven"); and (12) economic duress (against all Defendants) ("Claim Twelve"); along with (13) a request for declaratory judgment (against all Defendants) ("Claim Thirteen"). *Third Am. Compl.* [#33-1, #33-2] ¶¶

70-192.  In short, Plaintiff is an African-American male who challenges the foreclosure of the property located at 7594 S. Duquesne Ct., Aurora, Colorado 80016 (the "Property").  *Third Am. Compl.* [#33-1] ¶¶ 10, 12.

According to the Third Amended Complaint,[1] Defendant EMC is a loan service company that is now a division of Defendant Chase.[2]  *Id.* ¶ 2.  Defendant Young is the Senior Vice President of Financial Operations of Defendant EMC.[3]  *Id.* ¶ 3.  Defendant Chase is a "residential mortgage lender" that "allegedly provides residential home loans to consumers."  *Id.* ¶ 4.  Defendant Dimon is the Chairman and CEO of Defendant Chase.  *Id.* ¶ 5.[4]  Defendant Acqura is a loan service company.  *Id.* ¶ 6.  Defendant Berrong is the Manager of Defendant Acqura.  *Id.* ¶ 7.

On October 17, 2003, Plaintiff purchased the Property with a "80/20 loan" from Professional Home Mortgage.  *Id.* ¶ 25.  Plaintiff was the sole owner of the Property, which he occupied as his primary residence.  *Id.* ¶ 40(a).

---

[1]  Much of Plaintiff's Third Amended Complaint reads "like [a] manifesto[ ] against the residential loan industry."  *Moore v. One West/Indy Mac Bank*, 10-cv-01455-REB-CBS, 2010 WL 3398855, at *6 (D. Colo. July 12, 2010).  The Court is mindful that it must construe the filings of *pro se* litigants liberally.  *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing to *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be an advocate for *pro se* litigants, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on his behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[2]  Plaintiff alleges that Defendant EMC is a mortgage servicer, not an "actual lender."  *Third Am. Compl.* [#33-1] ¶ 21.

[3]  Plaintiff does not appear to mention Defendant Young anywhere else in the remainder of his Third Amended Complaint.

[4]  Plaintiff does not appear to mention Defendant Dimon anywhere else in the remainder of his Third Amended Complaint.

Some time in 2008, Plaintiff initiated a Chapter 7 bankruptcy proceeding. On October 16, 2008, the Trustee filed a "No Asset" report in Plaintiff's case. *Id.* ¶ 27. On November 4, 2008, Plaintiff's debt to Defendants EMC, Chase, and Acqura was discharged.[5] *Id.* ¶¶ 13, 25. At the time of the discharge, Deutsche National Bank ("Deutsche") was listed as the owner of Note. *Id.* ¶ 25. No representative from Deutsche or Defendants EMC, Chase, or Acqura filed proofs of claim on the Property in connection with the bankruptcy proceedings. *Id.* ¶ 26.

In February 2009,[6] Defendant EMC sought a loan modification agreement from Plaintiff. *Id.* ¶ 28. Apparently, Plaintiff agreed to the modification, because at some point during 2010 he attempted to rescind the modification. *Id.* ¶ 31. Defendant EMC informed Plaintiff that he owed more than $60,000.00 in fees, and that he had to continue to make payments on that debt to prevent foreclosure on the Property. *Id.* In January 2010, Plaintiff contacted Defendant EMC to try to reduce his mortgage payments. *Id.* ¶ 32. An agreement was reached and confirmed in writing, although Plaintiff states that Defendant EMC failed to acknowledge it. *Id.* ¶¶ 32, 39(d). As part of the agreement, Plaintiff paid Defendant EMC $6,700.00 on January 15, 2010, which was to be "allocated for the three month trial period that would lock the modified payment for the remainder of the contract." *Id.* ¶ 39(e). Plaintiff states that both Defendant EMC and Defendant Acqura failed to adhere to the agreement. *Id.* ¶ 39(f). After this agreement was reached, Plaintiff failed to

---

[5] Plaintiff also states that the "uncontested debt" was discharged in 2010. *Third Am. Compl.* [#33-1] ¶ 31.

[6] The precise time line of communication between Plaintiff and Defendant EMC in 2009 and 2010, and whether Plaintiff is referencing multiple modifications, is unclear from the Third Amended Complaint. It is also unclear what loan Defendant EMC was seeking to modify if Plaintiff's mortgage loan had been discharged in bankruptcy.

receive written statements and payment demands from Defendant EMC.  *Id.* ¶ 33.

On March 7, 2011, Plaintiff received notice from a law firm, Aronowitz & Mecklenburg ("A&M"), that Plaintiff was required to make his mortgage payments to Defendant Acqura from that point forward.  *Id.*  Plaintiff responded that no debt was due.  *Id.*  Plaintiff proceeded to contact Defendant EMC "numerous" times over the following months to inquire about his loan status.  *Id.* ¶ 34.  He was informed on March 31, 2011 that Defendant EMC had sold or transferred "the uncontested discharged loan" on August 16, 2010 to Defendant Acqura.  *Id.* ¶¶ 34, 37(b), 38(a).

In May 2011, Plaintiff received another notice from A&M, which stated that Defendant EMC was the owner of the mortgage note on the Property.  *Id.* ¶¶ 35, 37(a).  After receiving this notice, Plaintiff contacted Defendant EMC on an almost daily basis over the following months to obtain information about the status of his "discharged loan."  *Id.* ¶ 36.  In May 2011, Plaintiff spoke with Ms. Sherrie Johnson, Ms. Dewanna Peoples, Ms. Tammy Roberts, Ms. Sherrie Assuta, Ms. Gabriel Jessica, and Ms. Jessica Green, all of whom were representatives of Defendant EMC and who informed him that his account had a zero balance and that "the property was not in foreclosure at the time the loan was sold and transferred."  *Id.* ¶¶ 44-49.  On August 15, 2011, Defendant Berrong told Plaintiff that Defendant Acqura was a servicer for Defendant EMC and that "they did own the uncontested discharged debt alone."[7]  *Id.* ¶ 170(a).  On September 16, 2011, Plaintiff called

---

[7]  The only other time Defendant Berrong is mentioned in the Third Amended Complaint is when, on an unspecified date possibly in October 2011, in an unspecified court, "Defendants filed a motion requesting telephonic testimony by an EMC representative to testify they owned the uncontested discharged debt but instead called [Defendant Berrong of Defendant Acqura at] a private number not disclosed to the Plaintiff."  *Third Am. Compl.* [#33-2] ¶ 188.

Defendant EMC and spoke with Ms. Stephanie Abernathy and Ms. Diedra Bass, both of whom also informed him that his account had a zero balance and that "the property was not in foreclosure at the time the loan was sold and transferred." *Id.* ¶¶ 46-47.  Plaintiff avers that between May and September of 2011, he spoke with more than fifty representatives of Defendant EMC, including the loss mitigation department and high level executives. *Id.* ¶ 50.  Plaintiff states that he was disturbed by the degree of racial animus exhibited toward him by Defendant EMC's representatives, to whom he had identified his race for what he thought were statistical purposes. *Id.* ¶ 53.

At the end of September, Plaintiff was informed that Defendant EMC was going out of business and that he would have to contact Defendant Chase about the loan from then on. *Id.* ¶¶ 39(f), 50.  Between September 30, 2011 and November 2011, Plaintiff contacted Defendant Chase "numerous" times and was told each time that it did not own an interest in the Property.  *Id.* ¶ 51.  Plaintiff also contacted Defendant Acqura "numerous" times during this period and was told by managers and representatives there, including Ms. Syderia Shelton, that Defendant Acqura owned the loan as of November 2008 but would not work with Plaintiff to modify the loan as it had been discharged in bankruptcy. *Id.* ¶ 52. Plaintiff states that Defendant Acqura's representatives "became increasingly racially offensive and dismissive" of Plaintiff the more he called to obtain answers to his questions. *Id.* ¶ 54.

On October 8, 2011, Plaintiff sent a letter to Defendant EMC stating that A&M was misrepresenting that Defendant EMC owned the loan and was electing to foreclose on the Property.  *Id.* ¶ 39(b).  Defendant EMC responded that it had sold the loan and that Plaintiff's account had a zero balance.  *Id.*  Plaintiff called Defendant EMC more than fifty

times, but Defendant EMC did nothing to fix A&M's apparent misrepresentations.  *Id.* ¶ 39(c).  On November 3, 2011, Defendant EMC filed a forcible entry and detainer action against Plaintiff seeking to evict him.  *Id.* ¶ 39(f).  On November 18, 2011, Plaintiff was allegedly coerced into signing a waiver.[8]  *Id.* ¶ 41(a).  On "numerous" occasions up to January 17, 2012, Plaintiff sent Qualified Written Requests pursuant to RESPA to Defendant EMC to determine its interest in the Property.  *Id.* ¶¶ 12, 39(a).  On an unspecified date probably in January 2012, Plaintiff was evicted from the Property.  *Id.* ¶ 42(b).  Plaintiff alleges that Defendant EMC claims a present interest in the Property.  *Id.* ¶ 12.

In the Motions, Defendants primarily base their arguments for dismissal on a Colorado state court order entered on November 18, 2011.  *See Acqura's Ex. M, Stipulation and Order* [#36-13].[9]  In 2011, Defendant EMC brought a forcible entry and detainer case (Case No. 2011C11392) against Plaintiff in connection with the Property.  *Id.* Plaintiff was represented by counsel in this proceeding.  *See id.* at 2-3.  On November 18,

---

[8]  The waiver was apparently the same Stipulation and Order discussed by the Court *infra*.

[9]  Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment.  *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).  The Court may consider documents outside of the complaint on a motion to dismiss in three instances, however.  First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000).  Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record.  *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  Third, the Court may consider outside documents that are both central to the plaintiffs' claims and to which the plaintiffs refer in their complaint.  *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court has examined the documents submitted by the parties in connection with the Motions and has determined that each of the documents cited to in this decision may appropriately be considered by the Court in making its Recommendation on the pending Motions.

2011, Plaintiff, Plaintiff's attorney, counsel for Defendant EMC, and the judge signed a

Stipulation and Order (the "Consent Order"). *Id.* The Consent Order entered judgment for

possession of the Property as of November 18, 2011; mandated that the Writ of Restitution

issue within forty-eight hours; and ordered that no "sheriff move-out" of Plaintiff would occur

before January 15, 2012 at 11:59 p.m. *Id.* at 2.  Finally, the parties agreed to the following:

> [Plaintiff] hereby releases and forever waives any claims, known or unknown,
> arising out of [(a)] the Note and Deed of Trust more fully described in the . .
> . Order Authorizing Sale entered August 15, 2011 by Judge Hannen of the
> Arapahoe County District Court, (b) the [Property], (c) any and all actions to
> enforce the Note, Deed of Trust, debt collection or rights associated with the
> Property, including but not limited to the foreclosure sale (Public Trustee's
> Foreclosure Sale No. 1332-2011) and the forcible Entry and Detainer
> action/case # 2011 C11392, and (d) any state or federal debt collection
> claims, including but not limited to the FDCPA and the Colorado Fair Debt
> Collection Practices Act.  Vashone Adams releases and forever waives such
> claims against EMC Mortgage, LLC, EMC Mortgage Corporation, JPMorgan
> Chase Bank NA, Acqura, its subsidiaries, affiliates, servicers, parent
> companies, agents, employees, and attorneys, including but not limited to
> Aronowitz and Mecklenburg, LLP.

*Id.* at 2-3.

## II.  Standard of Review

### A.   Fed. R. Civ. P. 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the

Court has jurisdiction to properly hear the case before it.  Because "federal courts are

courts of limited jurisdiction," the Court must have a statutory basis to exercise its

jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P.

12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly

construed.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden

of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.* (citing

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v.. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

## B.    Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6) (A complaint may be dismissed for "failure to state a claim upon which relief can be granted."). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be

granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not shown that the pleader is entitled to relief," as required by Federal Rule of Civil Procedure 8(a).  *Iqbal*, 556 U.S. at 679 (quotation marks and citation omitted).

### III. Analysis

As it must, the Court construes Plaintiff's allegations favorably to him. *Erickson*, 551 U.S. at 93-94; *Zinermon v. Burch*, 494 U.S. 113, 118 (1990).  However, the allegations

presented by Plaintiff do not present a coherent sequence of events, as the Court is left with several unanswered questions.  For example, if Plaintiff's mortgage debt was discharged in bankruptcy, why was there a loan modification?  If Plaintiff was repeatedly told that his account had a zero balance, what was the basis for foreclosure?  On what dates did the foreclosure on the Property and subsequent eviction occur?  Nevertheless, despite these gaps in the events portrayed in Plaintiff's Third Amended Complaint, the record does not demonstrate that Defendants' defenses lack merit.  As discussed below, Defendants are entitled to dismissal of Plaintiff's claims against them as a matter of law.

A.     **Fed. R. Civ. P. 12(b)(1)**

Defendants first argue that Plaintiffs' claims should be dismissed pursuant to the *Rooker-Feldman* doctrine.  *Acqura's Motion* [#37] at 9-12; *Chase's Motion* [#38] at 6-8. They base their argument on the Consent Order entered on November 18, 2011.  *See Acqura's Ex. M, Stipulation and Order* [#36-13].  Plaintiff argues that the Consent Order was unconscionable, was based on fraud and misrepresentation of facts, and is therefore void.  *See, e.g.*, *Response to Acqura's Motion* [#41] at 1, 3.  Plaintiff specifically avers that his execution of the Consent Order violated the CCPA, was fraudulently induced, and was obtained under economic duress.  *Third Am. Compl.* [#33-2] ¶¶ 147-60, 165-82.  In his request for declaratory judgment, Plaintiff seeks to have the Consent Order declared null and void.  *Id.* ¶¶ 183-93.

"*Rooker-Feldman* precludes federal district courts from effectively exercising appellate jurisdiction over claims 'actually decided by a state court' and claims 'inextricably intertwined' with a prior state-court judgment."  *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006) (citations omitted).  In 2005, the Supreme Court narrowed the

scope of the *Rooker-Feldman* doctrine by mandating that it be applied only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  However, a court is not barred from exercising jurisdiction under *Rooker-Feldman* even if a plaintiff attempts to litigate in federal court a matter previously litigated in state court, so long as the plaintiff "presents some independent claim." *Id.* at 293.  This is true even if finding in the federal plaintiff's favor "denies a legal conclusion that a state court has reached in a case to which he was a party." *Id.*

Federal courts examining whether the *Rooker-Feldman* doctrine bars reexamination of a consent order entered by a state court in circumstances analogous to those in the present case appear to have uniformly upheld the bar.  For example, in *Sutton v. Sutton*, 71 F. Supp. 2d 383, 391-92 (D.N.J. 1999), the district judge held that the plaintiff was attempting to "trump[ ] up federal jurisdiction over state law claims for strategic reasons" and that *Rooker-Feldman* barred review of "a supposedly fraudulent consent order."  In *Murawski v. Baldwin*, No. Civ.A. 05-1255, 2006 WL 39154, at *2 (W.D. Pa. Jan. 6, 2006), *aff'd*, 209 Fed. App'x 99, 99 (3d Cir. 2006), the district judge found that granting relief to the plaintiff in a suit against a state court judge to overturn adverse rulings and to obtain relief from a consent order would require the district judge to find that the consent order was wrongly decided; the district judge held that such review was barred by the *Rooker-Feldman* doctrine.  In *Johnson v. Orr*, 551 F.3d 564, 569 (7th Cir. 2008), the Seventh Circuit affirmed a district court ruling that *Rooker-Feldman* barred review of a consent order even where the plaintiff alleged that there was newly-discovered evidence and that the

agreement was the result of fraudulent misrepresentation; the court held that the plaintiff must seek relief from the consent order in the state courts.

In a substantially similar case, *Crawford v. Adair*, No. 3:08CV281, 2008 WL 2952488, at *2 (E.D. Va. July 29, 2008), the district judge stated:

> The defendant in this case, Adair, filed a complaint in the Circuit Court for the City of Richmond . . . . Through this Unlawful Detainer action, he sought to have [the plaintiff] Crawford removed from the property at 1913 Clearfield Street, Richmond, Virginia and sought various costs. Crawford filed a counterclaim in which she sought to have her home "deeded back to [her] and legal fees incurred in this matter." . . . Thereafter, the parties reached a settlement, and the settlement agreement between the parties was memorialized by Crawford's attorney. A Consent Order was drafted and was signed by Adair's attorney, Crawford's attorney, and Crawford. It was then entered by the court on June 22, 2007. The Consent Order gave Adair immediate possession of the premises located at 1913 Clearfield Street . . . . On July 16, 2007, Crawford and Adair's attorney appeared before the circuit court judge on Crawford's motion to reopen the case. The circuit court judge denied the motion, finding that the Consent Order dated June 22, 2007 was a final order and that the court no longer had jurisdiction. The matter was then stricken from the docket. Crawford's answer to the motion to dismiss in this action lists many complaints against the state court judgment. Crawford complains about the signing of the Consent Order, the settlement, and her counsel.

Based on these facts, the district judge held that the plaintiff was "clearly requesting 'district court review and rejection of [the judgment of the Circuit Court for the City of Richmond].'" *Id.* He accordingly found that the *Rooker-Feldman* doctrine barred the exercise of federal jurisdiction over the case. *Id.*

Plaintiff explicitly seeks review and rejection of the state court judgment entered on November 18, 2011. *Third Am. Compl.* [#33-2] ¶¶ 183-93. His request that the Court find the Consent Order "void and unenforceable" is barred by the *Rooker-Feldman* doctrine. Plaintiff's assertion of fraud does not change this finding, because a state court is the proper forum for review of its own order. *See, e.g.*, *Johnson*, 551 F.3d at 568 (finding that

the remedy for a plaintiff alleging that he was fraudulently induced into executing a state court order was to seek relief from the state court); *Buck v. Deutsche Bank*, No. 09-3180, 2009 WL 3199184, at *2-3 (E.D. La. Sept. 30, 2009) (finding that *Rooker-Feldman* barred review of a state court consent judgment alleged by the plaintiff to have been secured through "fraud and ill practices").   If Plaintiff believes that his execution of the Consent Order violated the CCPA, was fraudulently induced, and was obtained under economic duress, the appropriate remedy is to pursue an independent action in state court that challenges the entry and terms of the Consent Order.   *See Yakimas v. Deutsche Bank Securities, Inc.*, No. 11-cv-01630-CMA-KLM, 2011 WL 5024899, at *5 (D. Colo. Oct. 21, 2011); *see also Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986) ("Judicial errors committed in state courts are for correction in the state court's systems, at the head of which stands the United States Supreme Court; such errors are no business of ours").

Accordingly, the Court finds that it lacks jurisdiction over Plaintiff's claim for economic duress (Claim Twelve) and request for declaratory judgment (Claim Thirteen), as well as the portions of Plaintiff's claims pursuant to the CCPA (Claim Nine) and for fraudulent inducement/concealment (Claim Eleven) that pertain to his execution of the Consent Order.   The Court therefore **recommends** dismissal of these claims.

**B.      Fed. R. Civ. P. 12(b)(6)**

Having found that this Court may not review and reject entry of the Consent Order, the Court turns to the contents of the Consent Order to determine its impact on Plaintiff's claims in this case.

The Tenth Circuit has stated that a consent decree should be accorded the weight

of a final judgment and construed as a contract.  *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1468 (10th Cir. 1993).  "A release is an agreement to which the general contract rules of interpretation and construction apply."  *Chase v. Dow Chemical Company*, 875 F.2d 278 (10th Cir.1989).  Unless ambiguous, a contract under Colorado law is interpreted and enforced "according to the plain and ordinary meaning of its language."  *Scott's Liquid Gold, Inc. v. Lexington Ins. Co.*, 293 F.3d 1180, 1184 (10th Cir. 2002).  Here, none of the parties assert that the language of the Consent Order is ambiguous.

The Consent Order provides that Plaintiff released and forever waived all claims known and unknown as of November 18, 2011 arising out of: (a) the Note and Deed of Trust (the "Note Provision"); (b) the Property (the "Property Provision"); (c) "any and all actions to enforce the Note, Deed of Trust, debt collection or rights associated with the Property" (the "Lawsuit Provision"), and (d) all state and federal debt collection claims (the "Debt Collection Provision").  *Id.* at 2-3.  In return for this release of claims, Plaintiff was allowed to continue to reside at his residence for two additional months, through January 15, 2012.  *Id.* at 2.  A release of claims in a settlement agreement is not an unusual provision.  *See, e.g.*, *SOFCO, LLC v. Nat'l Bank of Kansas City*, No. 08-2366-JAR, 2010 WL 3039567, at *4 (D. Kan. Aug. 3, 2010).

The Court next turns to the Defendants who are covered by the terms of the Consent Order.  There are six Defendants in this action: Defendant Acqura and its Manager, Defendant Berrong; Defendant Chase and its Chairman and CEO, Defendant Dimon; and Defendant EMC and its Senior Vice President of Financial Operations, Defendant Young.  *Third Am. Compl.* [#33-1] ¶¶ 2-7.  The Consent Order releases claims made by Plaintiff against Defendants Acqura, Chase, and EMC as well as their employees.

-15-

*Acqura's Ex. M, Stipulation and Order* [#36-13] at 3. Because Defendants Acqura, Chase, and EMC are all explicitly listed in the Consent Order and because Defendants Berrong, Dimon, and Young are their employees, the Court therefore finds that the Consent Order applies to all Defendants in the present matter.

Finally, the Court considers the types of claims covered by the Consent Order. Plaintiff has asserted thirteen claims against Defendants in the present lawsuit, eleven of which remain. *See supra* § III.A.; *Third Am. Compl.* [#33-1, #33-2] ¶¶ 70-174. Claim One pursuant to 42 U.S.C. § 1981 is based on Defendants' alleged racially-motivated theft of Plaintiff's property without due process of law. *Third Am. Compl.* [#33-1] ¶¶ 70-80. This cause of action is precluded by the plain and ordinary meaning of the Note, Property, and Lawsuit Provisions of the Consent Order. *See Acqura's Ex. M, Stipulation and Order* [#36-13] at 2-3. Accordingly, Claim One must be dismissed.

Claim Two pursuant to RICO is based on Defendants' alleged collection of money from Plaintiff on the "uncontested discharged debt" and subsequent sale of the debt once Plaintiff became aware of the allegedly illegal activity. *Third Am. Compl.* [#33-1, #33-2] ¶¶ 81-102. This cause of action is precluded by the plain and ordinary meaning of the Note, Property, and Debt Collection Provisions of the Consent Order. *See Acqura's Ex. M, Stipulation and Order* [#36-13] at 2-3. Accordingly, Claim Two must be dismissed.

Claim Three pursuant to 42 U.S.C. §§ 1981, 1982, 1983, and 1988(A) is based on Defendants' alleged racial animus and the alleged lack of privity of contract between the original holder of the Note and Defendants. *Third Am. Compl.* [#33-2] ¶¶ 103-11. This cause of action is precluded by the plain and ordinary meaning of the Note, Property, and Debt Collection Provisions of the Consent Order. *See Acqura's Ex. M, Stipulation and*

*Order* [#36-13] at 2-3.  Accordingly, Claim Three must be dismissed.

Claim Four pursuant to the Fourteenth Amendment is based on Defendants' alleged "seizure and sale of [the] property" and refusal "to produce documents during discovery." *Third Am. Compl.* [#33-2] ¶¶ 112-16.  This cause of action is precluded by the plain and ordinary meaning of the Note, Property, Lawsuit, and Debt Collection Provisions of the Consent Order.  *See Acqura's Ex. M, Stipulation and Order* [#36-13] at 2-3.  Accordingly, Claim Four must be dismissed.

Claim Five pursuant to the FDCPA is based on Defendants' alleged attempt to collect on a discharged debt not owned by them.  *Third Am. Compl.* [#33-2] ¶¶ 117-26.  This cause of action is precluded by the plain and ordinary meaning of the Note and Debt Collection Provisions of the Consent Order.  *See Acqura's Ex. M, Stipulation and Order* [#36-13] at 2-3.  Moreover, the Consent Order explicitly precludes claims pursuant to the FDCPA.  *Id.* at 3.  Accordingly, Claim Five must be dismissed.

Claim Six pursuant to TILA is based on Defendants' alleged failure to "provide Plaintiff written documentation regarding the terms of the modification, a Good Faith Estimate containing the terms of the modification, information regarding Plaintiff's rights regarding rescission and information regarding the increased fees."  *Third Am. Compl.* [#33-2] at ¶¶ 127-32.  This cause of action is precluded by the plain and ordinary meaning of the Note Provision of the Consent Order.  *See Acqura's Ex. M, Stipulation and Order* [#36-13] at 2.  Accordingly, Claim Six must be dismissed.

Claim Seven pursuant to the FTCA is based on Defendants' alleged misrepresentation of the amount owed by Plaintiff and misrepresentation that Defendants possessed the debt.  *Third Am. Compl.* [#33-2] ¶¶ 133-39.  This cause of action is

precluded by the plain and ordinary meaning of the Note and Debt Collection Provisions of the Consent Order. *See Acqura's Ex. M, Stipulation and Order* [#36-13] at 2-3. Accordingly, Claim Seven must be dismissed.

Claim Eight pursuant to RESPA is based in part on Defendants' alleged failure to transfer the Note without the required notice and without disclosing other appropriate and required information to Plaintiff in connection with the transfer of the Note. *Third Am. Compl.* [#33-2] ¶¶ 140-46. This cause of action is precluded by the plain and ordinary meaning of the Note Provision of the Consent Order. *See Acqura's Ex. M, Stipulation and Order* [#36-13] at 3. Accordingly, this portion of Claim Eight must be dismissed.

Plaintiff also asserts that Defendants violated RESPA by failing to respond to Plaintiff's Qualified Written Request sent on January 17, 2012. *Third Am. Compl.* [#33-2] ¶ 143. The Consent Order was signed on November 18, 2011. *See Acqura's Ex. M, Stipulation and Order* [#36-13] at 2-3. The language of the Consent Order does not unequivocally preclude claims arising after the date of the execution of the Consent Order, even if those claims arise in connection with the Note, Property, Lawsuit, or Debt Collection Provisions. *See id.* (stating that Plaintiff "hereby releases and forever waives any claims, known or unknown, arising out of" the Provisions). When the language of a release is unclear regarding future claims, the Tenth Circuit has stated a preference for finding "a voluntary relinquishment of a right that has already been asserted prior to the release than . . . a waiver of a right that the [plaintiff] has not yet asserted and may not even be aware of." *Bittner v. Blackhawk Brewery & Casino, LLC*, No. 03-CV-02274-MSK-PAC, *4 n.1 (D. Colo. Aug. 9, 2005). Here, the scope of the release does not explicitly contemplate claims arising after the date of the Consent Order, which are distinguishable from claims that

arose before the date of the Consent Order but that were unknown to Plaintiff.  *See SOFCO*, 2010 WL 3039567, at *4.  Accordingly, liberally construing the facts in a light most favorable to Plaintiff, the Court finds that the Consent Order does <u>not</u> preclude it from reaching the merits of this portion of Claim Eight on the motion to dismiss.

Claim Nine pursuant to the CCPA is based on Defendants' alleged inducement of "Plaintiff to modify an uncontested discharged debt" and then taking "money from the Plaintiff without actually giving him the ability to modify the loan."  *Third Am. Compl.* [#33-2] ¶¶ 147-60.  This cause of action is precluded by the plain and oridnary meaning of the Note Provision of the Consent Order.  *See Acqura's Ex. M, Stipulation and Order* [#36-13] at 2. Accordingly, Claim Nine must be dismissed.

Claim Ten pursuant to CFPA is based on Defendants' alleged "failure to disclose a Right of Cancellation to the Plaintiff."  *Third Am. Compl.* [#33-2] ¶¶ 161-64.  This cause of action is precluded by the plain and ordinary meaning of the Note Provision of the Consent Order.  *See Acqura's Ex. M, Stipulation and Order* [#36-13] at 3.  Accordingly, Claim Ten must be dismissed.

Claim Eleven based on fraudulent inducement/concealment is based on certain Defendants' alleged fraudulent statements that induced Plaintiff into signing the "unenforceable" loan modification.  *Third Am. Compl.* [#33-2] ¶¶ 165-74.  This cause of action is precluded by the plain and ordinary meaning of the Note Provision of the Consent Order.  *See Acqura's Ex. M, Stipulation and Order* [#36-13] at 2.  Accordingly, Claim Eleven must be dismissed.

Thus, the Court finds that Claims One, Two, Three, Four, Five, Six, Seven, Nine, Ten, Eleven and the portion of Claim Eight other than that involving Plaintiff's Qualified

Written Request sent on January 17, 2012 are precluded by the plain and ordinary meaning of the Consent Order.  The Court therefore **recommends** dismissal of these claims.

## C.    Claim Eight: RESPA

The Court reviews Plaintiff's RESPA claim based on Defendants' alleged failure to respond to his Qualified Written Request sent on January 17, 2012.[10]

RESPA creates a duty to provide information related to "the servicing of the loan." 12 U.S.C. § 2605(e)(1)(A), 2605(i)(3).  This information includes reporting the borrower's payments, the distribution of the payments between principal and interest, and escrow disbursements to pay property taxes.  *See Pool v. Wells Fargo Bank, N.A.*, No. 11-cv-01066-LTB-KLM, 2012 WL 3264294, at *6 (D. Colo. Aug. 10, 2012) (citing *De Vary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1108 (D. Minn. 2010) (noting that a request for information regarding financing of the original loan, rather than information regarding the servicing of that loan, is not covered by RESPA)).

The servicer of a federally related mortgage loan must acknowledge receipt of a Qualified Written Request within twenty days of its arrival.  12 U.S.C. § 2605(e).  Within 60 days of receiving the request, the servicer must make applicable corrections or provide a written explanation as to why the servicer believes the account to be correct.  *Id.*  A RESPA letter must be labeled as a "Qualified Written Request," include information necessary to identify the borrower, and a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).

---

[10] Plaintiff claims to have sent other Qualified Written Requests to Defendants but provides no information about them.  *See Third Am. Compl.* [#33-1] ¶ 12.

First, by its explicit terms, RESPA creates a duty on the part of the "servicer," a term which is strictly construed.  *See Kee v. Fifth Third Bank*, No. 2:06-CV-00602-CW, 2009 WL 735048, at *4 (D. Utah Mar. 18, 2009).  Plaintiff alleges that he sent the Qualified Written Request to Defendant EMC and, liberally reading the Third Amended Complaint, to Defendant Acqura.  *Third Am. Compl.* [#33-1, #33-2] ¶¶ 12, 143.  He alleges no facts connecting the other Defendants to these incidents.  Accordingly, the Court **recommends** that Claim Eight be dismissed in its entirety as to Defendants Chase, Young, Dimon, and Berrong.

Second, Plaintiff alleges that in his Qualified Written Request, he sought information that "would definitely determine that [Defendant EMC] is not in privity with any contract or note to which the Plaintiffs were ever a party" and "regarding the discharged debt in question."  *Third Am. Compl.* [#33-1, #33-2] ¶¶ 12, 143.  "That a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan."  *Consumer Solutions Reo, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) (holding that a letter disputing the validity of the loan rather than the servicing was not a QWR); *see also MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 900–01 (N.D. Ill.2000) (holding that a letter alleging a forged deed and irregularities in recording did not relate to the servicing of the loan).  Because Plaintiff merely alleges that he sought information regarding the validity of the loan, his Qualified Written Request sought information that is not covered by RESPA, and Plaintiff's claim fails.  Accordingly, the Court **recommends** that Plaintiff's Claim Eight against Defendants EMC and Acqura also be dismissed.

## IV.  Recommendation for Dismissal

Accordingly, the Court respectfully **RECOMMENDS** that the Motions [#37, #38] be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that Plaintiff's Third Amended Complaint [#33-1, #33-2] be **DISMISSED without prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  August 21, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

-22-